# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| GREGORY JAMES BLEDSOE | CIVIL ACTION NO. 21-4367 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| DEAN WILLIS, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court are three motions to dismiss filed by Defendants Sergeant Dean Willis ("Willis") and Officer David McClure ("McClure") of the Shreveport Police Department [Record Document 19], Caddo Parish Assistant District Attorney Brittany Arvie ("Arvie") [Record Document 25], and Caddo Parish District Attorney James E. Stewart, Sr. ("Stewart") [Record Document 27] (collectively, hereinafter, "Defendants"). The motions have been fully briefed. For the reasons articulated below, the motions are **GRANTED IN PART** and **DENIED IN PART**.

### I. Background

This case arises out of the alleged malicious prosecution of Plaintiff Gregory Bledsoe ("Bledsoe"). On August 4, 2015, McClure responded to a reported burglary at a residence located on Dalzell Street ("Dalzell Street Property"). Record Document 1 at ¶ 8. Sandra Robinson ("Robinson") leased the residence, Record Document 36-1 at 2, which was managed by Port City Realty on behalf of a third-party owner, Record Document 1 at ¶ 7. Robinson reported that her front window was broken, the front door was unlocked, and that some property was missing. *Id.* at ¶ 8. At that time, McClure collected fingerprints from

doorknobs and a window. *Id.* ¶ 44. The fingerprints eventually came back from the lab as "not identifiable." *Id.* at ¶ 84.

Between August 4, 2015, and August 7, 2015, Port City contracted with Bledsoe to repair the front door window at the Dalzell Street Property. *Id.* at ¶ 71. Port City Realty had previously contracted with Bledsoe to complete handyman repair projects at three different sites. *Id.* at ¶¶ 71, 73. Bledsoe alleges that he was cut by glass while repairing the front door window. *Id.* at ¶ 72.

On August 7, 2015, McClure returned to the Dalzell Street Property to conduct a follow-up interview with Robinson. *Id.* at ¶ 9. According to Bledsoe, the window was repaired before McClure's follow-up visit. *Id.* During McClure's interview, Robinson reported that she had noticed blood near the fixed window. *Id.* McClure took a sample of that blood and submitted it for analysis. *Id.* at ¶¶ 11-12. The sample came back as a match for Bledsoe. *Id.* Willis contacted Robinson, who reported that she neither knew Bledsoe nor gave Bledsoe permission to enter the property. *Id.* at ¶ 14. Bledsoe alleges that at no point during the interviews did Robinson disclose that she leased the Dalzell Street Property from the third-party owner, nor did McClure or Willis independently inquire or investigate its ownership. *See id.* at ¶¶ 10, 14, 15.

Bledsoe contends that he was arrested for simple burglary of an inhabited dwelling, based solely on the fact that his blood matched the sample. *Id.* at ¶¶ 57, 61. Bledsoe pled not guilty. *Id.* at ¶ 65. While out on bond, Bledsoe failed to appear for a hearing and was arrested. *Id.* at ¶¶ 64, 77. Bledsoe was incarcerated for two years and spent an additional year on home confinement while awaiting trial. *Id.* at ¶¶ 77, 78. During this time, Bledsoe

alleges that the Caddo Parish District Attorney's Office—and more specifically, Arvie, as the prosecuting attorney—attempted to coerce him into pleading guilty. *Id.* at ¶¶ 24, 27. By the time the case went to trial in 2021, Arvie had reduced Bledsoe's charges to misdemeanor theft and criminal trespass. *Id.* at ¶ 28. Bledsoe alleges that "[b]y the end of the trial, [Arvie] admitted [she] had failed to prove misdemeanor theft." *Id.* The trial court found Bledsoe not guilty of criminal trespass. *Id.*

Bledsoe filed this suit pursuant to 42 U.S.C. § 1983 and Louisiana state law. Specifically, Bledsoe brings federal and state malicious prosecution claims against Willis and McClure, a federal malicious prosecution claim against Arvie, and two municipal liability claims against Stewart. *See generally* Record Document 1 at 22, 24-25, 28, and 31. Bledsoe seeks compensatory damages from Willis, McClure, and Stewart, declaratory and injunctive relief against Arvie and Stewart, and attorneys' fees. *Id.* at 33. Defendants' foregoing motions seek dismissal of all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Both Arvie and Stewart raise absolute immunity in their motions. *See* Record Documents 25-1 at 3 and 27-1 at 2. Willis and McClure raise qualified immunity in their motion. *See* Record Document 19-1 at 2-3.

## II. Law & Analysis

### a. Rule 12(b)(6) Standard

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement

of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all of the factual allegations in the complaint in determining whether a plaintiff has stated a plausible claim. *See Twombly*, 550 U.S. at 555; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A court may dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678-79. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

    b. **Section 1983 Claims**

Bledsoe brings federal and state malicious prosecution claims and municipal liability claims against Defendants. Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law. 42 U.S.C. § 1983.

Section 1983 does not create substantive rights but provides remedies to the rights established in the United States Constitution and other federal laws. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985). The Court will address each cause of action below.

      i. <u>Malicious Prosecution Claims</u>

Bledsoe raises Fourth Amendment malicious prosecution claims against Willis, McClure, and Arvie. Specifically, Bledsoe argues that "[t]he Fourth Amendment of the Constitution protects citizens against unreasonable search and seizure by law enforcement officers." Record Document 1 at ¶¶ 121, 148. Willis and McClure proffer different arguments than Arvie as to why their motion to dismiss should be granted. The Court will address each claim individually.

A standalone Fourth Amendment malicious prosecution claim was only recently recognized by the Supreme Court in *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022). "The gravamen of the Fourth Amendment claim for malicious prosecution, as this Court has recognized it, is the wrongful initiation of charges without probable cause." *Id.* The *Thompson* Court adopted the common law elements for a malicious prosecution tort, which are:

    (i)    [T]he suit or proceeding was "instituted without any probable cause";
    (ii)   [T]he "motive in instituting" the suit "was malicious," which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and
    (iii)  [T]he prosecution "terminated in the acquittal or discharge of the accused."

*Id.* at 1338 (citing Thomas Cooley, *Law of Torts* 181 (1880)). The Court declined to address "whether a plaintiff bringing a Fourth Amendment claim under § 1983 for malicious prosecution must establish malice (or some other *mens rea*) in addition to the absence of probable cause." *Id*. at 1338 n.3.

The Fifth Circuit had previously recognized the tort of malicious prosecution in *Gordy v. Burns*, 294 F.3d 722, 725 (5th Cir. 2002), before its decision was abrogated by *Castellano v. Fragozo*, 352 F.3d 939, 954 (5th Cir. 2003) (en banc). After the Supreme Court's decision in *Thompson*, the Fifth Circuit readopted the six *Gordy* elements required to succeed on a constitutional malicious prosecution claim. *See Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023). These six elements are coextensive with the elements of the Louisiana state law tort of malicious prosecution. *Gordy*, 294 F.3d at 725. Those elements are:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Armstrong*, 60 F.4th at 279 (citing *Gordy*, 294 F.3d at 727). "Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights." *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 86-1696 (La. 7/28/87); 511 So. 2d 446, 453 (citations omitted). In Louisiana, an individual does not have to prove that he or she is innocent of the crime to succeed on a Fourth Amendment malicious prosecution claim. *Armstrong,* 60 F.4th at 279 n.14.

> 1. *State and Federal Malicious Prosecution Claims Against Willis and McClure*

In his complaint, Bledsoe brings malicious prosecution claims against Willis and McClure pursuant to Section 1983 and Louisiana state law. Record Document 1 at 22-24. In response to the federal malicious prosecution claim, Willis and McClure raise qualified immunity. The issue of whether qualified immunity applies should be resolved at the earliest possible stage in the litigation. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). While qualified immunity is technically an affirmative defense, Bledsoe bears the burden of negating the defense once it has been raised. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

To determine the applicability of qualified immunity, a court must make a two-part inquiry: (1) whether the facts alleged or shown by the plaintiff demonstrate a violation of a constitutional right, and (2) if a violation has been established, whether the officer's actions were objectively reasonable in light of clearly established law at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court may begin its analysis of qualified immunity with either prong. *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. *See Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding that qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law")).

In their motion to dismiss, Willis and McClure seek dismissal, claiming that "the Fifth Circuit has explicitly held that a claim of malicious prosecution, standing alone, is not a violation of the United States Constitution." Record Document 19-1 at 3 (citing *Castellano*, 352 F.3d at 945). Willis and McClure filed the instant motion prior to the *Thompson* opinion and did not seek to revise their motion, even in the wake of *Thompson*. The Supreme Court's ruling in *Thompson* renders that argument moot as to federal liability. However, Willis and McClure make more substantive arguments regarding the Louisiana state malicious prosecution claim. Because the elements for a Section 1983 malicious prosecution claim run coextensively with the elements of a Louisiana state malicious prosecution claim, the Court can analyze the first prong of Willis's and McClure's qualified immunity defense—whether there has been a violation of a constitutionally protected right—simultaneously with its analysis of Bledsoe's state malicious prosecution claim.

Accepting all of the factual allegations in his complaint as true, the Court finds that Bledsoe has plausibly alleged federal and state malicious prosecution. Looking at the six elements set forth in *Armstrong*, Willis and McClure argue that Bledsoe cannot plausibly establish the fourth and fifth elements; however, they do not address the first, second, third, or sixth elements. *See* Record Document 19-1 at 4-5. The Court will briefly address those four elements before turning to a more comprehensive discussion of the fourth and fifth elements. Bledsoe contends that the criminal investigation conducted by Willis and McClure—their interviews of Robinson, the collection of fingerprints, and the testing of the blood sample—led to his arrest, trial, and acquittal for criminal trespass and misdemeanor theft. Record Document 1 at ¶¶ 15-17, 28, and 122. When accepted as fact, these allegations

plausibly demonstrate that a criminal proceeding was commenced (the first element), the criminal proceeding was the direct result of information that Willis and McClure gathered during their investigation (the second element), and that the proceeding came to a natural conclusion (the third element). Furthermore, Bledsoe adequately pleads the sixth element by alleging that he has suffered economic damages, which include the loss of his social security benefits and the loss of his job, among others. *Id.* at ¶ 80.

The Court also finds that Bledsoe pleads the fourth element of probable cause with sufficient plausibility. As to the alleged lack of probable cause, Willis and McClure argue that the independent intermediary doctrine insulates them from liability because an arrest warrant was issued by the trial court judge. Record Document 19-1 at 4 (citations omitted). The independent intermediary doctrine requires that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Anokwuru v. City of Hous.*, 990 F.3d 956, 963 (5th Cir. 2021) (internal quotation marks and citations omitted). However, "an officer can still be liable if the officer deliberately or recklessly provides false, material information for use in an affidavit or makes knowing and intentional omissions that result in a warrant being issued without probable cause." *Id.* at 963-64 (citations omitted).

Bledsoe disagrees that the independent intermediary doctrine insulates Willis and McClure from liability, arguing that it "only shields an officer from liability by breaking the probable cause chain when all the facts are presented[,] and the intermediary's decision is truly independent of the wrongfulness of the defendant's conduct." Record Document 36-1

9

at 17 (citing *Melton v. Phillips,* 837 F.3d 502, 510 (5th Cir. 2015)) (internal quotation marks omitted). Here, the crux of Bledsoe's claim is that the trial court judge was not privy to the full scope of information available during the criminal investigation and that this incomplete information was the direct result of Willis and McClure's recklessness and failure to disclose material information. Bledsoe plausibly alleges that an arrest warrant would not have been issued but for the reckless investigation that omitted exculpatory evidence regarding the source of the blood and Bledsoe's contract with Port City Realty. The Court finds that, with respect to the fourth element, Plaintiff is able to meet his burden at this stage of litigation.

Bledsoe also meets his burden with respect to the fifth element—the existence of malice. Defendants argue that "Plaintiff's [c]omplaint make[s] it clear that he is claiming only that more or a better investigation should have been conducted, not that either defendant acted with malice." Record Document 19-1 at 5. Furthermore, "there is no allegation, nor any facts from which it could be inferred that [Willis and McClure] submitted false information or that they *intentionally* withheld exculpatory information from the state district judge prior to the issuance of the arrest warrant." *Id.* at 6. In response, Bledsoe argues that Willis and McClure mischaracterize the law in their motion because recklessness is a culpable state of mind, which he adequately pleads in his complaint. Record Document 36-1 at 19 (citations omitted). Bledsoe is correct; a showing of recklessness can adequately satisfy the malice or *mens rea* element in malicious prosecution claims. *See Miller*, 511 So. 2d at 453. Again, Bledsoe alleges with sufficient specificity that Willis and McClure acted recklessly—first, in their procurement of an arrest warrant without sufficient probable cause

10

and based on a "clearly deficient investigation," second, in furnishing an inaccurate official narrative report which the Caddo Parish District Attorney's Office and the trial court judge relied upon, and third, as a result of their failure to contact or attempt to contact the owner of the Dalzell Street Property. *Id.* at ¶¶ 122, 123, 127-129. At the motion to dismiss stage, Bledsoe meets the pleading requirements to satisfy the fifth element, and in turn, overcome the first prong of the qualified immunity analysis. The Court also finds that Bledsoe meets the pleading requirements for the Louisiana state law malicious prosecution claims.

Second, the Court finds that, accepting Bledsoe's factual allegations as true, Willis and McClure should have been aware that their unreasonable behavior violated the law. The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law. *Pearson v. Callahan,* 555 U.S. 223, 244 (2009). Though the law regarding malicious prosecution in the Fifth Circuit has been in flux, Louisiana state law is clear in its recognition of malicious prosecution, and even further, in its determination that malicious prosecution has occurred when there was no probable cause to arrest an individual or when an officer acted in reckless disregard of an individual's rights. *See, e.g., Miller*, 511 So. 2d at 453; *Winn v. City of Alexandria*, 96-492 (La. App. 3 Cir. 11/20/96); 685 So. 2d 281, 287; *Jones v. Soileau*, 83-1966 (La. 2/27/84); 448 So. 2d 1268, 1273. In other words, assuming that Bledsoe's allegations are true, though Willis and McClure may not have had sufficient notice that their behavior was objectively unreasonable or unlawful with regard to a Section 1983 malicious prosecution claim, both federal and state law have always been clear that officers cannot arrest someone without probable cause. Furthermore, Louisiana state law relating to malicious prosecution

11

has always been clear that arresting someone without probable cause is in direct violation of the law.

Considering Bledsoe's well-pleaded complaint, Willis and McClure's motion to dismiss [Record Document 19] is **DENIED** with respect to the standalone malicious prosecution claims under both federal and state law.

*2. Federal Malicious Prosecution Claims Against Arvie*

Bledsoe's third cause of action is a Section 1983 malicious prosecution claim against Arvie in which he seeks declaratory and injunctive relief. Bledsoe argues that Arvie's decision to pursue "the simple burglary charge against [Bledsoe] notwithstanding her knowledge of the evidence of [Bledsoe's] innocence, the lack of any evidence in support of the charge against him, and the clearly deficient investigation by [Willis and McClure] was done with a wanton and reckless disregard for [Bledsoe's] constitutional rights." Record Document 1 at ¶ 156. In response, Arvie raises two defenses: absolute immunity and the lack of standing for injunctive relief. Neither Arvie nor Bledsoe address the individual elements of federal malicious prosecution, and the Court declines to address the issue absent any discussion from the parties. The Court will, however, address the issues of absolute immunity and standing in turn.

Arvie asserts absolute immunity in her motion to dismiss. Specifically, she argues that she "is absolutely immune for acts or omissions which relate to the initiation and prosecution of criminal charges." Record Document 25 at ¶ 5. Prosecutors enjoy absolute immunity from Section 1983 suits when their actions are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). This

12

is because "[t]he ultimate fairness of the operation of the system itself could be weakened by subjecting prosecutors to § 1983 liability." *Id.* at 427. The Supreme Court adopted a "functional approach" to determine whether a prosecutor's actions are protected by absolute immunity. *Hart v. O'Brien*, 127 F.3d 424, 439 (5th Cir. 1997), *abrogated on other grounds by Spivey v. Robertson,* 197 F.3d 772 (5th Cir. 1999) (citing *Imbler*, 424 U.S. at 431). Under the functional approach, "[a] prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in her role as 'advocate for the state' in the courts, or when her conduct is 'intimately associated with the judicial phase of the criminal process.'" *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) (quoting *Hart*, 127 F.3d at 439). "Absolute immunity *does* leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427 (emphasis added).

Arvie argues that her actions were consistent with those taken during a criminal prosecution which entitles her to absolute immunity. Record Document 25-1 at 3. Bledsoe disagrees, contending that absolute immunity is only applicable in instances where damages are sought. Record Document 29-1 at 3. Bledsoe is correct. "Neither absolute nor qualified personal immunity extends to suits for injunctive or declaratory relief under § 1983." *Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844 (5th Cir. 1991) (citing *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984); *Sup. Ct. of Va. v. Consumers Union, Inc.*, 446 U.S. 719, 736 (1980); *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 134 (5th Cir. 1986); *Holloway v. Walker*, 765 F.2d 517, 519 (5th Cir. 1985)). As previously mentioned,

13

Bledsoe does not seek damages from Arvie, only injunctive and declaratory relief. As a result, Arvie does not have absolute immunity from Bledsoe's claims.

Arvie also purports that Bledsoe lacks standing to assert a claim for injunctive relief. Record Document 30 at 1. "The [Supreme] Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citations omitted). To be granted injunctive relief, Bledsoe must be able to prove "(1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *VRC LLC v. City of Dall.*, 460 F.3d 607 (5th Cir. 2006). Bledsoe must prove that his constitutional rights are currently being violated and that it is reasonably likely that his constitutional rights will continue to be violated because of Arvie's actions. *See Sec. and Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765 (5th Cir. 2017).

Arvie contends that "Plaintiff has not and cannot allege a real and immediate threat of injury to himself nor the likelihood of substantial and immediate irreparable injury to himself." Record Document 30 at 2. Conversely, Bledsoe contends that he continues to "suffer from [] adverse effects arising from his wrongful arrest and prosecution." Record Document 38 at 7. Furthermore, "as an indigent Black man, [Bledsoe] fears that he will be wrongfully arrested and prosecuted again for a crime he did not commit if he leaves home to even just go to work . . . " *Id.* While the Court sympathizes with Bledsoe, the fear of something *potentially* reoccurring in the future does not meet the pleading requirements at

the motion to dismiss stage. Furthermore, that Bledsoe continues to suffer the effects of an action that has already come to pass does not meet the requisite burden for injunctive relief.

While the Court finds that Arvie lacks absolute immunity, Bledsoe is also unable to meet his burden at the motion to dismiss stage with respect to his claim for injunctive relief. Accordingly, Arvie's motion to dismiss [Record Document 25] is **DENIED** regarding Bledsoe's Section 1983 claim for malicious prosecution with respect to declaratory relief; however, the foregoing motion is **GRANTED** with respect to Bledsoe's request for injunctive relief against Arvie.

### ii. Section 1983 – Municipal Liability Claims

Lastly, Bledsoe raises two municipal liability claims under Section 1983—the adoption of an official policy or custom and the failure to train and supervise—as well as individual capacity claims against Stewart. Record Document 1 at 1, 28, 31. In response, Stewart raises absolute immunity. Record Document 27-1 at 2. The Court will address the municipal liability and individual capacity claims below, along with Stewart's absolute immunity defense.

#### 1. Official Policy or Custom

Bledsoe first contends that the alleged Section 1983 malicious prosecution he suffered was caused by an official policy or custom promulgated or adopted by Stewart. As previously mentioned, Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law. 42 U.S.C. § 1983. The Supreme Court has held that municipalities are "persons" within the meaning of Section 1983. *Monell*

*v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). In the Fifth Circuit, "a Louisiana district attorney, sued in his or her official capacity, is a local government official who is not entitled to Eleventh Amendment immunity." *Burge v. Par. of St. Tammany*, 187 F.3d 452 (5th Cir. 1999). However, "a municipality cannot be held liable *solely* because it employs a [constitutional] tortfeasor."[1] *Id.* at 691. A municipality is liable under *Monell* when the execution of one of its customs or policies is responsible for the constitutional harm. *Id.* at 694.

To successfully establish municipal liability, a plaintiff must prove three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). An "official policy" can be evidenced through "duly promulgated policy statements, ordinances or regulations," or by a custom that is such a persistent and widespread practice that, although not officially promulgated, it fairly represents a municipal policy. *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984); *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168-69 (5th Cir. 2010).

---

[1] Bledsoe brings only two causes of action against Stewart, and both are municipal liability claims. These municipal liability claims are against Stewart in his official capacity as Caddo Parish District Attorney. In his complaint, Bledsoe indicates that he is suing Stewart in his individual capacity based on a theory of *respondeat superior*, Record Document 1 at 1; however, no additional causes of action, other than the municipal liability claims, are raised against Stewart and Plaintiff provides no legal argument in support of this individual capacity claim. Furthermore, the *Monell* Court made it clear that a "municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 692. In other words, Stewart cannot be sued both in his individual and official capacities if the official capacity claims are municipal liability claim and the individual capacity claims are predicated on the theory of *respondeat superior*, as is the case here. Accordingly, the individual capacity claim against Stewart is **DISMISSED WITH PREJUDICE**.

Requiring a plaintiff to identify an official policy ensures that municipalities will only be held liable for constitutional violations that result from the decisions of government officials whose acts can be fairly attributed to those of the municipality itself. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404-05 (1997). To establish the existence of a custom, a plaintiff must allege that the unconstitutional conduct occurred in cases other than his own or, in rare circumstances, that a final policymaker took a single unconstitutional action. *Zarnow*, 614 F.3d at 169 (5th Cir. 2010). "A customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581.

Stewart argues that Bledsoe fails to articulate a specific policy, practice, or custom causing the alleged constitutional violations. Record Document 27-1 at 3. Furthermore, Stewart contends that, to the extent that Plaintiff makes any claims relating to an official policy, practice, or custom, those allegations are "vague and conclusory. That those allegations are lacking is buttressed by the incorporation of general historical allegations about the Caddo Parish District Attorney's Office," that predate Stewart's term of office. *Id.* Bledsoe argues that he has alleged specific facts that, even without a specific name or designation, support his claim that an official policy, practice, or custom exists. *See* Record Document 32-1 at 7. Bledsoe argues that this is sufficient at the motion to dismiss stage. *Id.* The Court disagrees. Bledsoe fails to identify an official policy that he believes was adopted or created by Stewart. Bledsoe also fails to provide any specific information about an official custom promulgated by Stewart, such as when Bledsoe believes that custom was adopted or whether other accused criminal defendants have felt the effects of this custom in

17

their interactions with the Caddo Parish District Attorney's Office. Bledsoe also did not sufficiently allege a single unconstitutional act that he believes Stewart took as the final policymaker for the Caddo Parish District Attorney's Office. The naming of a specific policy or practice is necessary for a municipal liability claim to survive the motion to dismiss stage. Bledsoe fails to satisfy this burden. Accordingly, Stewart's motion to dismiss is **GRANTED** with respect to Bledsoe's official policy municipal liability claim.

### 2. *Failure to Train and Supervise*

For Bledsoe to succeed on his Section 1983 claim that Stewart failed to train and supervise, he must demonstrate: (1) inadequate training or supervision of the individuals involved; (2) the inadequate training or supervision caused a violation of the plaintiff's constitutional rights; and (3) the inadequate training and supervision constituted deliberate indifference of municipal policymakers to the plaintiff's constitutional rights. *Cousin v. Small,* 325 F.3d 627, 637 (5th Cir. 2003).

With respect to the failure to train claim, "the focus must be on adequacy of the training program in relation to the tasks the particular officer must perform." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2018). Deliberate indifference requires actual or constructive notice that a particular omission in a training program causes city employees to violate citizens' constitutional rights, yet the municipality nevertheless chooses to retain that program. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). As the Fifth Circuit has explained, the evidence must demonstrate more than "a mere 'but for' coupling of cause and effect. The deficiency in training must be the actual cause of the constitutional violation." *Shumpert*, 905 F.3d at 317. A pattern of similar constitutional violations by

untrained and unsupervised employees is ordinarily necessary to demonstrate deliberate indifference. *Id*. "Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id*.

In his opposition, Bledsoe's sole rebuttal argument to Stewart's motion to dismiss Bledsoe's claim is that Stewart does not address the failure to train and supervise issue in his motion. *See* Record Document 32-1 at 8. However, that is not true. In his motion to dismiss, Stewart describes the general nature of the failure to train and supervise allegations and discusses caselaw that directly addresses the issue. Record Document 27-1 at 2-3. Furthermore, Bledsoe fails to name a specific training program created by Stewart that he believes to be deficient. While Bledsoe alleges what he believes to be the *result* of Stewart's alleged failure to train and supervise in *his* case—Arvie's failure to present exculpatory evidence during his trial and the "unrelenting" nature of the criminal prosecution against him—he does not allege with specificity which deficient training or supervisory procedure caused the alleged unconstitutional criminal prosecution against him. Record Document 1 at ¶¶ 109, 195. Furthermore, Bledsoe does not allege that there is a pattern of inadequate supervision, how often Stewart fails to supervise his attorneys, or what impact Stewart's failure to supervise has on the Caddo Parish District Attorney's Office and its prosecutorial abilities. Stewart's motion to dismiss is **GRANTED** with respect to Bledsoe's failure to train and supervise claims.

### *3. Absolute Immunity*

Defendant Stewart raises absolute immunity. Record Document 27-1 at 2. However, as the Supreme Court held in *Monell*, "municipal bodies sued under § 1983 cannot be entitled to absolute immunity . . . " 436 U.S. at 701. Accordingly, Stewart's absolute immunity defense is moot.[2]

### III. Conclusion

For the foregoing reasons, Defendants' motions to dismiss [Record Documents 19, 25, and 27] are **GRANTED IN PART** and **DENIED IN PART**. The motions to dismiss are **GRANTED** as to the municipal liability claims against Stewart [Record Document 27] and the injunctive relief sought against Arvie for her alleged malicious prosecution [Record Document 25]; these claims are **DISMISSED WITH PREJUDICE**. The motions to dismiss are **DENIED** with respect to the federal and state malicious prosecution claims against Willis and McClure [Record Document 19] and the declaratory relief sought against Arvie for her alleged malicious prosecution [Record Document 25]. The Clerk of Court is directed to terminate District Attorney James E. Stewart as a party in this case.

**THUS DONE AND SIGNED** this 30th day of March, 2023.

**ELIZABETH ERNY FOOTE**
**UNITED STATES DISTRICT JUDGE**

---

[2] Stewart's absolute immunity defense is also moot because his motion for summary judgment has otherwise been granted.